71 F.3d 1319
 In re JOINT EASTERN & SOUTHERN DISTRICTS ASBESTOS LITIGATION.
In the Matter of JOHNS-MANVILLE CORPORATION, et al., Debtors
Bernadine K. FINDLEY, as Executrix of the Estate of Hilliard
Findley, et al., Plaintiffs,
v.
Donald M. BLINKEN, et al., Defendants.
Appeal of James WALKER.
 No. 94-2661.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 18, 1995.
Decided Dec. 12, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied Jan. 24, 1996.
 
 James Walker (argued), pro se.
 Christopher Q. King (argued), Gregory R. Naron, Sonnenschein, Nath & Rosenthal, Chicago, IL, Steven H. Frankel, Sonnenschein, Carlin, Nath & Rosenthal, San Francisco, CA, Elena Z. Kezelis, Springfield, IL, for Manville Personal Injury Settlement Trust.
 Before BAUER and RIPPLE, Circuit Judges, and REYNOLDS, District Judge.*
 RIPPLE, Circuit Judge.
 
 
 1
 James Walker appeals the judgment of the district court enforcing a judgment of contempt rendered by the United States District Courts for the Southern and Eastern Districts of New York. Mr. Walker previously had refused to pay the New York judgment and had been held in contempt by the Illinois district court for his refusal. That court later required that the supersedeas bond previously posted by Mr. Walker to obtain a stay of the Illinois contempt be applied to the satisfaction of the New York judgment. For the reasons set forth in the following opinion, we affirm the judgment of the district court.I
 
 BACKGROUND
 
 2
 The lengthy and convoluted history of this case has been documented in our previous opinion, In re Joint Eastern & Southern Districts Asbestos Litigation, 22 F.3d 755 (7th Cir.1994) ("Walker I "). We therefore assume familiarity with that opinion. We limit the following rendition to those matters necessary to orient the reader to the precise issue before the court at this juncture. As we explained in detail in Walker I, there are two contempt judgments involved in this case. We therefore deal with what the district court termed "a contempt on contempt." In re Joint Eastern & Southern Dists. Asbestos Litig., 855 F.Supp. 265, 265 (C.D.Ill.1994). We set forth the basic facts with respect to each.
 
 
 3
 The first contempt, which is the basis of the enforcement action now before us, is the judgment of contempt ordered against Mr. Walker by the United States District Courts for the Southern and Eastern Districts of New York ("the Rendering Courts") on September 3, 1991. The Rendering Courts entered judgment on September 3, 1991, ordering a civil sanction of $81,655 plus interest against Mr. Walker, to be recovered by the Manville Personal Injury Settlement Trust ("Manville Trust"). The sanction was imposed because Mr. Walker had interfered with the disposition of funds set aside by the Manville Trust to pay asbestos claimants, some of whom were represented by Mr. Walker. After determining that Mr. Walker was in contempt because of his initiation of state court proceedings in defiance of the court's order, the Rendering Courts directed:
 
 
 4
 Remand the case, respectfully, to the Magistrate to determine all legal costs and expenses of the Bank and the Manville Trust and direct whether such expenses should be assessed against the contemnor [James Walker].
 
 
 5
 . . . . .
 
 
 6
 The Magistrate shall also consider whether these contemptuous acts should be referred to the disciplinary committee in Illinois that has jurisdiction over Mr. Walker.
 
 
 7
 Tr. (show cause hearing, Apr. 23, 1991) at 3, 5. The subsequent written order, entered over the signature of the clerk of the court, contained the following directive:
 
 
 8
 With respect to sanctions, this matter has been referred to the Honorable John L. Caden, United States Magistrate, to determine whether sanctions, if any, should be imposed against Walker and, if so, in what amount. The Magistrate has also been asked to determine, inter alia, whether further sanctions should be imposed if Walker fails to obey this Court's order.
 
 
 9
 Judgment of Civil Contempt of James Walker, April 24, 1991, at 3. Although this order appears to be broader than the district court's verbal directive, Mr. Walker never objected to its contents. Nor did he object to the proceedings before the magistrate judge or take any appeal from the magistrate's order fixing the penalty for contempt. The judgment of the Rendering Courts, moreover, was not appealed to the United States Court of Appeals for the Second Circuit.
 
 
 10
 The second contempt arose out of the attempt of the Manville Trust to collect the judgment of contempt through collection proceedings in the Central District of Illinois. On October 21, 1991, the Manville Trust registered the New York judgment in the United States District Court for the Central District of Illinois for the purpose of collection. See 28 U.S.C. Sec. 1963. It then began collection proceedings against Mr. Walker. Mr. Walker refused, however, to cooperate at the hearing on the citation to discover assets. He again refused to comply at a show cause hearing. After a hearing, the district court held Mr. Walker in civil contempt for refusing to answer questions. See In re Joint Eastern & Southern Dists. Asbestos Litig., 830 F.Supp. 1153, 1155 (C.D.Ill.1993). In light of Mr. Walker's past conduct, the court considered the sanction of imprisonment appropriate. It sentenced Mr. Walker to imprisonment conditioned on cooperation with the Manville Trust in the discovery of Mr. Walker's assets. When Mr. Walker appealed that decision, the district court stayed his sentence of imprisonment upon the posting of the $100,000 supersedeas bond. Mr. Walker did file the bond in the district court, and then appealed to this court.[1]
 
 
 11
 In Walker I, we dismissed Mr. Walker's appeals for want of appellate jurisdiction. The first appeal was from a denial, without prejudice, of Mr. Walker's motion for dismissal of the judgment of contempt entered against him by the Rendering Courts. Noting the procedural posture of the enforcement action at the time the appeal came to us, we held that, "as a general rule, an order authorizing discovery in aid of execution of judgment is not appealable until the end of the case." Walker, 22 F.3d at 760. We noted that neither the district court nor Mr. Walker regarded the court's ruling as a final disposition of the matter. Indeed, the district court had deferred to the Rendering Courts with respect to Mr. Walker's contention that the underlying judgment of the Rendering Courts was not valid, and we held that this decision also was not appealable. We wrote that that decision "is most realistically viewed as a decision of sound judicial administration rather than as a juridical act having the consequences of finality that require further review by an appellate tribunal." Id. at 763. It was not a final judgment, but rather a "common-sense decision that is consonant with the usual approach of district courts asked to review the judgment of another district now registered for purpose of collection." Id. at 764.
 
 
 12
 The second appeal in Walker I, which we also dismissed for want of finality, was of the district court's civil contempt ruling against Mr. Walker. Following established case law, we held that an order of civil contempt is generally not a final decision for purposes of Sec. 1291, Powers v. Chicago Transit Authority, 846 F.2d 1139, 1141 (7th Cir.1988), and that "an order of civil contempt enforcing a discovery order in supplementary proceedings" is likewise unappealable, Resolution Trust Corp. v. Ruggiero, 987 F.2d 420, 421 (7th Cir.1993) (per curiam). Id. at 764. As a result, we dismissed both appeals for lack of appellate jurisdiction.
 
 
 13
 Following our dismissal of the appeals, the Manville Trust filed a motion in the district court requesting that the court enter an order requiring the execution on the $100,000 supersedeas bond deposited with the court by Mr. Walker on September 16, 1993. In its motion, the Manville Trust stated that it had "made demand on Walker for payment of the judgment," and that it was "entitled, toward satisfaction of the unsatisfied judgment against Walker it registered in [the Illinois District Court], to execute on the supersedeas bond posted by Walker." Manville Trust's Motion for Execution on Bond, at 2. The Manville Trust specifically sought the disbursement of $97,474.26, with accrued interest on that amount of $16.11 per day after May 23, 1994, from the supersedeas bond posted by Mr. Walker. Id. at 3.
 
 
 14
 The district court granted the motion on June 16, 1994. It ordered disbursement of $97,760.90 to the Manville Trust, in care of the attorney of record, and the balance to James Walker's attorney. In its opinion, although it had previously deferred to the Rendering Courts on the validity of the underlying judgment, the district court considered Mr. Walker's objection to the motion of the Manville Trust and determined that it was without merit. Mr. Walker had submitted that the New York judgment was void and unenforceable under 28 U.S.C. Sec. 636(e) because it was imposed by a magistrate judge instead of a district judge. The district court first rejected the legal ground upon which Mr. Walker based his assertion:
 
 
 15
 28 U.S.C. Sec. 636(e) applies to situations in which a person commits an act of contempt before a magistrate judge. That is not what happened in this case. Here, Mr. Walker had violated two injunctive decrees of the Rendering Courts prohibiting further litigation against the assets of the Manville Trust, and the Rendering Courts directed Mr. Walker to appear at a show cause hearing to explain his disobeyance of those courts' orders.
 
 
 16
 In re Joint Eastern & Southern Dists. Asbestos Litig., 855 F.Supp. at 266. The court then summarized the proceedings before the Rendering Courts in New York that led to the New York judgment of civil contempt against Mr. Walker, correcting Mr. Walker's erroneous factual assertions. The court noted that the district judge, and not the magistrate judge, had adjudged Mr. Walker to be in civil contempt, and then had referred the matter to the magistrate judge for a determination of the amount of sanctions to be assessed against Mr. Walker for his civil contempt. The district court concluded that the supersedeas bond could appropriately be disbursed toward the satisfaction of a valid underlying judgment from another federal district.
 
 
 17
 Thus, the contempt judgment sought to be enforced in this Court is the valid judgment of a district court judge, and there is no reason why the supersedeas bond posted by Mr. Walker cannot be applied in satisfaction of the judgment rendered in favor of the Manville Trust by the Eastern and Southern Districts of New York.
 
 
 18
 Id. It ordered disbursement of $97,760.90 to the Manville Trust, in care of its attorney of record, and the balance of the bond to be remitted to Mr. Walker, in care of his attorney of record.
 
 II
 DISCUSSION
 
 19
 We now turn to the issues raised in this appeal.[2]
 
 
 20
 Mr. Walker appeals the Illinois District Court's denial of his Rule 60(b)(4) motion and its granting of the Manville Trust motion for execution on his supersedeas bond. In his view, the judgment of the Rendering Courts is void because it was entered by a magistrate judge, not a district judge. Mr. Walker asserts that, because the underlying judgment was void, the district court had no discretion when reviewing the Rule 60(b)(4) motion.
 
 
 21
 In evaluating this contention, we note at the outset that the district court's view of this case apparently changed rather drastically after its earlier rulings. In the orders that were the basis of the earlier appeal to us, the district court had taken the view that the validity of the underlying judgment was a matter best addressed by the Rendering Courts. Indeed, in its opinion of August 26, 1992, the court had posed the rhetorical question:
 
 
 22
 Are collateral attacks interposed against a foreign contempt judgment and resulting sanctions, registered for enforcement in this district pursuant to 28 U.S.C. Sec. 1962, properly considered by this Court?
 
 
 23
 In re Joint Eastern & Southern Dists. Asbestos Litig., 800 F.Supp. 643, 644 (C.D.Ill.1992). The court answered its own question emphatically: "In this case, absolutely not!" Id. In elaborating further, the district court determined that considerations of judicial comity and efficient judicial administration "dictate" that Mr. Walker's opposition to the enforcement of the judgment be referred to the Rendering Courts for review. Id. at 646. The court stressed that the judgment contained no "glaring irregularities," id. at 647, and that the Rendering Courts have extensive familiarity with the complexities of the case. Id. In our own subsequent opinion, although noting that we had no jurisdiction to review the particular orders presented to us, we remarked that "considerations of convenience, comity and efficient judicial administration were the controlling factors." In re Joint Eastern & Southern Dists. Asbestos Litig., 22 F.3d 755, 762-63 (7th Cir.1994).
 
 
 24
 The decision of the district court now under review provides us with no indication as to why the court, once so firm in its view that the Rendering Courts ought to review Mr. Walker's contention, now believes that it was preferable that it address squarely the merits of that submission. Although the matter is one quite clearly committed to the discretion of the district court, we cannot perceive from the record before us any reason for the district court's change of heart. Indeed, the concerns that originally persuaded the district court to defer to the Rendering Courts continue to make us reluctant to address the merits. Our examination of the record reveals some ambiguity as to the exact mandate given the magistrate judge by the Rendering Courts. Certainly, there appears to be a disparity between the scope of the verbal direction given by the district judge in the Rendering Courts and the scope of the written order entered over the signature of the clerk. Because this ambiguity might be very relevant in determining the degree of control that the district judge in the Rendering Courts desired to retain over the proceeding to determine the penalty for the contempt, we shall not base our disposition of this appeal on a determination whether the magistrate judge exceeded his authority.
 
 
 25
 In our view, an antecedent question, with respect to which we can perceive no ambiguity, affords an ample and principled basis upon which the judgment of the district court ought to be affirmed. As the Manville Trust notes, there can be no doubt that, although he had notice of the proceedings, Mr. Walker never challenged before the Rendering Courts the reference to the magistrate judge. Nor did he ever challenge in that court, or in the reviewing appellate court, the decision of the magistrate judge. Indeed, there was no challenge by Mr. Walker until the collection proceedings were filed in the Central District of Illinois. Even then, Mr. Walker never attempted to initiate review proceedings in the Rendering Courts, despite the district court's expressed preference, initially, for that route.
 
 
 26
 Under these circumstances, we believe that it is clear that Mr. Walker has waived any objection he might have to the validity of the judgment of the Rendering Courts. Nor do we believe that it can be maintained that the issue ought to be confronted, despite Mr. Walker's obvious waiver, because the issue is "jurisdictional." In our view, such a label is inappropriate. Whatever the authority of the magistrate judge to enter the order in question in the absence of the consent of the parties, Mr. Walker's failure to object gave that consent. See Peretz v. United States, 501 U.S. 923, 932-33, 111 S.Ct. 2661, 2666-67, 115 L.Ed.2d 808 (1991). Nor do we believe that the absence of an Article III judicial officer in these circumstances can be characterized as the sort of "structural protection," id. at 937, 111 S.Ct. at 2669, that cannot be waived by the litigant. As Judge Easterbrook wrote for the court in an analogous situation, "[w]hich judicial officer presides ... does not affect the court's subject-matter jurisdiction, for it has nothing to do with whether the tribunal may enter a judgment conclusively resolving the dispute.... We do not have a 'jurisdictional' problem of the kind that a tribunal must notice even though no party raised the problem. We have at most a mistaken interpretation of a law designating which judicial officer shall preside over the proceedings." United States v. Wey, 895 F.2d 429, 431 (7th Cir.), cert. denied, 497 U.S. 1029, 110 S.Ct. 3283, 111 L.Ed.2d 792 (1990).
 
 
 27
 Because Mr. Walker made no effort, at any time in the proceedings, to contest the order of the magistrate judge before the Rendering Courts, the district court correctly denied relief under Rule 60(b)(4) and enforced the judgment presented to it under 28 U.S.C. Sec. 1963. Accordingly, the judgment of the district court is affirmed.
 
 
 28
 AFFIRMED.
 
 
 
 *
 The Honorable John W. Reynolds, United States District Judge for the Eastern District of Wisconsin, is sitting by designation
 
 
 [1]
 When he posted the supersedeas bond, Mr. Walker filed in the district court this statement along with his deposit of $100,000:
 Therefore, the condition of this $100,000 bond shall be for the prosecution of the appeal and the appearance of James Walker to submit to the Marshall [sic] to be taken into custody or to answer questions in compliance with the Citation to Discover Assets and the Court's order of September 14, 1993, in the event the order is affirmed or the appeal dismissed. If the judgments which are the subject of this action are satisfied or if the order of September 14, 1993, is reversed, then this obligation shall be void, and the $100,000 bond money shall be returned to James Walker.
 Statement re Supersedeas Bond, filed Sept. 16, 1993.
 
 
 [2]
 Mr. Walker also claims, as a threshold matter, that the Trust does not have the capacity to sue. This argument has been waived. See Fed.R.Civ.P. 9(a); Wagner Furniture Interiors, Inc. v. Kemner's Georgetown Manor, Inc., 929 F.2d 343, 345-46 (7th Cir.1991)